## THE HAROLD.

(District Court, S. D. New York. December 18; 1922.)

Collision &⇒22—Between ice-bound vessels held caused by act of God.

A tug, ice-bound with her tow at the Delaware Breakwater, with many other vessels, which, in maneuvering in the ice to return to a safe anchorage one of her barges that had been carried out to sea by the ice, came into collision with libelant's schooner, *held* to have been managed with ordinary care and skill by her master under the circumstances, and the collision *held* to have been caused by act of God, for which she was not liable.

In Admiralty. Suit for collision by the Clark & Wilkins Company against the tug Harold. Decree for respondent.

Burlingham, Veeder, Masten & Fearey, of New York City (Chas. E. Wythe, of New York City, of counsel), for libelant.

Park & Mattison, of New York City (H. E. Mattison, of New York City, of counsel), for claimant.

WARD, Circuit Judge. Between December 25, 1917, and January 10, 1918, the Harbor of Refuge, Delaware Breakwater, was filled with weather-bound tows which could not proceed on their voyages on account of a most unusual and extraordinary quantity of ice, both there and in the Delaware Bay and out to sea. December 31 five tows left the Harbor of Refuge, but were obliged to put back on New Year's Day. The schooner Jessie L. Leach was lying with her starboard side alongside a small pier near the lighthouse on the New Breakwater, heading to the northward. The steam tug Harold, with her tow of two ship-style barges, the Theodore Palmer and Virginia Palmer, loaded with coal, were lying higher up to the northward near some ice breakers.

January 2, 1918, the Virginia Palmer was carried by the ice and ebb tide out to sea, and three days later, which was as soon as she could get out of the Breakwater, the tug Harold went to search for her, and brought her back on a hawser about 3 :30 p. m. As she was proceeding to her original anchorage, she encountered a field of heavy ice, which

was being carried by the ebb tide and northwest wind toward the Breakwater and out into the bay. The tug, being able to make no head-way through this ice, rounded to on a starboard helm, with the inten-tion of going out to sea with the barge; but, the situation becoming constantly more difficult, the towing hawser was taken in and the barge dropped her anchor and fetched up in a space of clearer water near the Breakwater and above the schooner Leach. Meanwhile the tug, which was trying to get out into the bay, was carried by the ice, which was so heavy that, although her engines were working full speed astern, her propeller was stopped, and she was making no headway. The ice carried her over toward the schooner, and her port bow came into col-lision with the schooner's port bow, doing some damage. Soon after, the ice floe having drifted by, the tug backed up the harbor to the barge Virginia Palmer, but was not able to proceed with her tow until Janu-ary 10th.

Various criticisms are made of the navigation of the master of the tug. In respect to these, we must remember that the emergency was sudden and grave; that there was little time in which to decide; that other tugs in the harbor, larger than his, were dragging their anchors; that all that was required of him was to act with ordinary care, dili-gence, and skill according to the circumstances; and, finally, in deter-mining whether he did, we must put ourselves in his place, and divest ourselves of the knowledge that comes after the event.

It is said that he should have ported instead of starboarding before he let his barge go adrift, in which case he might have reached as safe an anchorage as she did. I think that there was less tide and ice near the Breakwater than further out in the harbor, but when he starboarded he was intending to go with the barge to sea, and lie outside the Break-water, which the heavy floe of ice prevented him from doing. Indeed, in any circumstances, it was natural to move against the tide and wind away from the Breakwater, rather than to port and assist the ice and tide in carrying him against it.

Next, it is suggested that he should have dropped his anchors; but larger tugs were dragging their anchors, and there is slight reason to suppose that his would have held. If he had done so when going ahead, there would have been great danger of the anchor chains fouling the propeller and disabling the tug entirely, and if he had done so when he stopped his engines, he is of opinion that the tug would have been over-whelmed by the ice.

Finally it is suggested that he should have gone full speed astern be-fore he did, and should have gone full speed ahead when he did go full speed astern. All these suggestions are in respect to matters of judgment, as to which the master was only required to exercise ordi-nary skill, care, and diligence, and I think he did so, and that the proxi-mate and sole cause of the collision was the tide and ice—an act of God. The Hercules, 73 Fed. 255, 19 C. C. A. 496.

The libel will be dismissed, but under the circumstances without costs.